*168*

# IN THE UNITED STATES COURT OF APPEALS

## FOR THE FIFTH CIRCUIT

U.S. COURT OF APPEALS
**FILED**

SEP 0 3 2002

**CHARLES R. FULBRUGE III
CLERK**

No. 00-41038

AUBARY DELANO-PYLE,                                                    Plaintiff-Appellee,

                                                versus                      *CA B-98-171*

.VICTORIA COUNTY, TEXAS; ET AL.,                            Defendants,

VICTORIA COUNTY, TEXAS,                                        Defendant-Appellant.

Appeals from the United States District Court
for the Southern District of Texas

United States District Court
Southern District of Texas
FILED

NOV 1 9 2002

Michael N. Milby
Clerk of Court

Before JONES, EMILIO M. GARZA, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:

Victoria County appeals the district court's denial of its motion for judgment as a matter of law on Aubary Delano-Pyle's ("Pyle") Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") claims. For the reasons stated herein, we affirm.

### FACTUAL AND PROCEDURAL HISTORY

On July 17, 1998, Pyle, who is severely hearing-impaired, was involved in a car accident when he rear-ended another vehicle traveling on the shoulder of Highway 77 in Victoria County. Victoria County Deputies Anthony Daniel ("Daniel") and Dana Wager ("Wager") arrived at the scene of the accident in response to a report of an incoherent subject at the location. Shortly after

the officers arrived, Pyle informed them of his hearing disability. While investigating the accident, Daniel searched Pyle's vehicle and discovered Hydrocodone and Darvocet.[1] Despite his knowledge of Pyle's disability, Daniel proceeded to administer three sobriety tests without asking Pyle which form of communication would be effective for him. Daniel testified that, prior to administering the tests, he turned on the video camera in his patrol car, which is standard procedure when an officer suspects that there may be a need for an arrest.

First, Daniel administered what is known as the "walk and turn" test. This test requires the individual to take nine steps, heel-to-toe, along a straight designated line while counting the steps out loud and watching his feet. After taking nine steps, the subject must then turn around and return to the starting point in the same manner. Daniel demonstrated the test for Pyle, however, Daniel had his back turned to Pyle while giving instructions. Pyle performed the task as demonstrated, but because he did not understand the instructions as communicated, he took more than nine steps before turning around.

Second, Daniel administered a test called the "one-leg stand." This required Pyle to stand on one-leg and count to ten. The videotape revealed that Daniel demonstrated the task, but spoke very quickly when giving instructions. Again, Pyle was able to complete the task as demonstrated, however, he counted to fourteen, rather than ten. Lastly, Daniel conducted a finger-to-nose test. Daniel instructed Pyle to stand straight with his heels together, his arms at his sides, and his head tilted back. He further requested that Pyle touch the end of his nose with his index finger by bringing his arm and hand from his side directly to the end of his nose. In demonstrating this test, Daniel

---

[1]A physician prescribed Hydrocodone to Pyle for shoulder pain and the Darvocet was prescribed to his uncle Charles Pyle. There is no evidence that Pyle was under the influence of either of the medications at the time the accident took place.

tilted his head back, extended his arms, and reached and touched his nose. With his head still tilted, Daniel requested that Pyle touch his nose six times. Pyle performed the task as demonstrated, however, due to his failure to understand Daniel's instructions, he touched his nose approximately twenty-five times. Daniel concluded that Pyle was unable to complete the tests as instructed, and arrested him for driving while intoxicated.[2] Pyle asserts that he did not understand the directions given by the officer because he was unable to read his lips and, had he understood, he would have performed the tests as requested. Prior to arresting Pyle, Daniel read him his Miranda warnings. When Daniel asked Pyle if he understood his rights as communicated to him, Pyle did not respond. Daniel testified that he was not sure if Pyle understood either the verbal instructions given by Daniel during the administration of the sobriety tests or the Miranda warnings given at the scene.

At the police station, Daniel read Pyle his legal rights once again and wrote the Miranda warnings on a blackboard. With the knowledge that Pyle is hearing-impaired and may not have understood his verbal communications, Daniel, nonetheless, interrogated him without any accommodations to ensure that Pyle understood the circumstances of his arrest. After the interrogation, Daniel requested that Pyle consent to a blood test. Pyle maintains that Daniel asked him six times before he finally agreed. After passing the blood test, Pyle was released on July 19, 1998.

Subsequently, Pyle filed a lawsuit against Victoria County alleging violations of Title II of the ADA, 42 U.S.C. § 12132, et seq.; section 504 of the RA, 29 U.S.C. § 794, et seq.; chapter 121 of the Texas Human Resources Code ("THRC"); and 42 U.S.C. § 1983. During trial, after Pyle

---

[2]Pyle asserts that he was also arrested for failure to produce proof of insurance. However, the police report does not evidence such an offense.

3

rested, Victoria County moved for judgment as a matter of law pursuant to Rule 50(a) of the Federal Rules of Civil Procedure. The district court granted its motion on the § 1983 claim for denial of medical attention and unauthorized medical testing, but denied the motion as to Pyle's ADA, RA, and THRC claims. As to these claims, the district court ruled that a fact issue existed as to whether there was intentional discrimination or deliberate indifference in Victoria County's treatment of Pyle.

Victoria County presented its case and the claims were submitted to the jury. Victoria County did not renew its motion for judgment as a matter of law. Specifically, the jury found that (1) Pyle, by reason of his hearing disability, was excluded from participation in, or denied the benefits of, the services, programs, or activities of a public entity, or otherwise subjected to discrimination by Victoria County; (2) Victoria County's conduct was intentional; and (3) Victoria County's exclusion, denial, or discrimination proximately caused damages to Pyle. The jury awarded Pyle compensatory damages in the amount of $230,000. Victoria County appeals the denial of judgment as a matter of law on the ADA and RA claims, but does not appeal the denial on the THRC claim.[3]

### STANDARD OF REVIEW

Victoria County appeals the district court's denial of its motion for judgment as a matter of law made at the close of Pyle's case-in-chief. Essentially, it argues that Pyle failed to present sufficient evidence establishing that (1) a policymaker for Victoria County acted with deliberate

---

[3]Pyle asserts that his THRC claim is an independent basis upon which to sustain the jury verdict absent an appeal by Victoria County. Victoria County correctly responds that the jury did not answer either of the interrogatories which related to the THRC claim, and Pyle failed to object to them not being answered. Thus, Pyle has waived this claim. See Hess Oil Virgin Islands Corp. v. UOP, Inc., 861 F.2d 1197, 1203 (10th Cir. 1988) (holding that when a party is aware of the jury's failure to answer an interrogatory and does not object, nor request the district court to resubmit the interrogatory to the jury, the party has waived his right to assert the issue on appeal).

indifference to the strong likelihood that Pyle's rights under the ADA or the RA would be violated, or (2) its conduct was intentional.

We review a district court's ruling on a Rule 50(a) motion for judgment as a matter of law *de novo*. Resolution Trust Corp. v. Cramer, 6 F.3d 1102, 1109 (5th Cir. 1993). Under this standard, we view all of the evidence "in the light and with all reasonable inferences most favorable to the party opposed to the motion." Id. (citation omitted). A district court may not grant a Rule 50(a) motion "unless a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fitzgerald v. Weasler Eng'g, Inc., 258 F.3d 326, 337 (5th Cir. 2001). This court reviews a jury's verdict for sufficiency of the evidence by determining whether

> reasonable and fair-minded [jurors] in the exercise of impartial judgment might reach different conclusions . . . . A mere scintilla is insufficient to present a question for the jury. . . . However, it is the function of the jury as the traditional finder of facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses.

MacArthur v. Univ. of Tex. Health Ctr. at Tyler, 45 F.3d 890, 896 (5th Cir. 1995) (citation omitted).

According to Rule 50(b) of the Federal Rules of Civil Procedure, it is well-settled that a motion for directed verdict or judgment as a matter of law made at the close of the plaintiff's case-in-chief must be renewed at the close of the all evidence in the case. Id. (citing McCann v. Texas City Refining, Inc., 984 F.2d 667, 671(5th Cir. 1993)). Thus, prior to addressing Victoria County's insufficiency of the evidence claim, we must first determine whether it is procedurally barred from challenging the evidentiary support for the jury's verdict when Victory County failed to renew its motion at the close of all the evidence. As a general rule, a party that fails to renew his motion for judgment as a matter of law at the conclusion of all the evidence waives its right to challenge the

sufficiency of the evidence on appeal. United States ex rel.Wallace v. Flintco Inc., 143 F.3d 955,

960 (5th Cir. 1998). However, we have excused technical noncompliance with Rule 50(b) in limited

circumstances. In cases where this court has departed from the strict requirements of Rule 50(b), the

"deviation from the rule was 'de minimis,' and the purposes of the rule were deemed accomplished."

Polanco v. City of Austin, Tex., 78 F.3d 968, 974 (5th Cir. 1996).

        We have determined that this rule serves two fundamental purposes: "to enable the trial court

to re-examine the sufficiency of the evidence as a matter of law if, after verdict, the court must

address a motion for judgment as a matter of law, and to alert the opposing party to the insufficiency

of his case before being submitted to the jury." Id. (citation omitted). Thus, we have allowed a party

to raise a sufficiency of the evidence contention, although failing to comply with the requirements

of Rule 50(b), "when the purposes of the rule have been satisfied because the court has had the

opportunity to reconsider sufficiency as a matter of law and because the nonmovant has had the

opportunity to cure any insufficiencies." Purcell v. Seguin State Bank & Trust Co., 999 F.2d 950,

956 (5th Cir. 1993) (citation omitted). Generally, however, we have only excused departures from

Rule 50(b) where the trial court had taken under advisement an earlier motion for directed verdict,

which was made after the plaintiff rested; the defendant presented no more than two witnesses prior

to closing; only a few minutes elapsed from the time the motion for directed verdict was made and

the conclusion of all the evidence; and no rebuttal evidence was introduced by the plaintiff. E.g.,

Giles v. General Elec. Co., 245 F.3d 474, 483 (5th Cir. 2001) (citation omitted). In the absence of

the circumstances stated above, we have found that the purposes of the rule have not been satisfied,

and therefore, the complaining party has waived its right to contest the jury's verdict on sufficiency

of the evidence grounds. See Purcell, 999 F.2d at 956.

Considering the facts before us, we conclude that Victoria County's departure from Rule 50(b) is not de minimis, and thus, it has waived any challenge on appeal to the sufficiency of the evidence supporting the jury's verdict. This case presents a factual pattern very similar to that addressed by this court in McCann. In McCann, the plaintiff filed suit against Hill Petroleum, Inc. ("Hill") asserting Age Discrimination in Employment Act violations. At the conclusion of the plaintiff's case-in-chief, Hill moved for directed verdict asserting that the plaintiff failed to establish intentional discrimination by Hill. The motion was flatly rejected by the district court. As in this case, Hill neglected to inform this court, either in briefs or at oral argument, that it had not moved for judgment as a matter of law at the close of all of the evidence. We held that Hill's failure to renew its motion had the consequence of precluding this court's review of Hill's sufficiency of the evidence claim. Id. at 671. In determining that Hill's noncompliance with Rule 50 was not de minimis, we noted that (1) Hill's motion for directed verdict was flatly rejected, instead of being taken under advisement; and (2) Hill presented numerous witnesses after the close of the plaintiff's case. We concluded that "[n]either the district court nor the plaintiff[]could have been aware that Hill continued to challenge the sufficiency of the plaintiff [sic] *prime facie* case." Id. at 672. This court further noted that in Hill "[it] [was] not faced with a "de minimis" departure but rather a complete failure to follow the requirements of Rule 50(b)." Id. We acknowledged that this circuit "approaches such questions of technical compliance with 'liberal spirit,'" however, we declined to judicially rewrite the Federal Rules of Civil Procedure. Id.

Here, the district court ruled on Victoria County's motion for directed verdict immediately after it was made. Further, although Victoria County only presented two witnesses, an entire day, rather than a few minutes, elapsed from the time the motion was made and the close of all the

evidence. In addition, Pyle submitted rebuttal evidence. Because we find <u>Giles</u> and <u>McCann</u> to be

controlling precedent, we conclude that Victoria County's noncompliance with Rule 50(b) cannot

be regarded as de minimis.

Where a party fails to timely move for judgment as a matter of law, and such failure does not

constitute a de minimis departure, "we will consider the issue as waived by the defendant and will

treat the issue as being raised for the first time on appeal." <u>Polanco v. City of Austin, Tex.</u>, 78 F.3d

968, 974 (5th Cir. 1996). Accordingly, we review any challenge to the sufficiency of the evidence

only for plain error. <u>Id.</u> Under the plain error standard, we will only reverse the jury's verdict "if

the judgment works a manifest miscarriage of justice." <u>Giles</u>, 245 F.2d at 482 (citation omitted).

Such review requires this court to merely ascertain if the plaintiff has submitted "*any* evidence in

support of his claim." <u>Id.</u> If it is determined that no evidence supports the jury's verdict, "we will

not simply enter judgment for the defendant; instead, we must order a new trial." <u>Id.</u> (citation

omitted).

## DISCUSSION

The ADA is a federal anti-discrimination statute designed "[t]o provide a clear and

comprehensive national mandate for the elimination of discrimination against individuals with

disabilities."[4] <u>Rizzo v. Children's World Learning Ctr., Inc.</u>, 173 F.3d 254, 261 (5th Cir. 1999). The

---

[4]The ADA states in relevant part:

[N]o qualified individual with a disability shall, by reason of such disability, be
excluded from participation in or be denied the benefits of the services, programs, or
activities of a public entity, or be subjected to discrimination by any such entity.

42 U.S.C. § 12132 (1995). A "public entity" is broadly defined under the statute as "any State or
local government" and "any department, agency, special purpose district, or other instrumentality of
a State or States or local government." <u>Id.</u> § 12131(1).

8

RA was enacted "to ensure that handicapped individuals are not denied jobs or other benefits because of prejudiced attitudes or ignorance of others."[5] Brennan v. Stewart, 834 F.2d 1248, 1259 (5th Cir. 1988). The language in the ADA generally tracks the language set forth in the RA. In fact, the ADA expressly provides that "[t]he remedies, procedures and rights" available under the RA are also accessible under the ADA. 42 U.S.C. § 12133 (1995). Thus, "[j]urisprudence interpreting either section is applicable to both." Hainze v. Richards, 207 F.3d 795, 799 (5th Cir. 2000). A plaintiff asserting a private cause of action for violations of the ADA or the RA may only recover compensatory damages upon a showing of intentional discrimination. Carter v. Orleans Parish Pub. Sch., 725 F.2d 261, 264 (5th Cir. 1984).

In the instant case, the jury instructions provided that, in order for Pyle to sustain a claim under the ADA or the RA, he must prove the following facts by a preponderance of the evidence: "First: That [he] was either 1) excluded from participation in or denied the benefits of services, programs, or activities of [Victoria County], or 2) was subjected to discrimination by Victoria County. Second: That Victoria County's conduct was intentional."

In addressing this issue, Victoria County argues that we should apply analogous case law involving § 1983 suits against municipalities. In Piotrowski v. City of Houston, we held that

---

[5]The RA provides:

> No otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency.

29 U.S.C. § 794 (1995).

"municipal liability under § 1983 requires proof of three elements: a policymaker; an official policy; and a violation of constitutional rights whose 'moving force' is the policy or custom." 237 F.3d 567, 578 (5th Cir. 2001).

Victoria County argues that Pyle has failed to produce any evidence of policies, customs, or practices implemented by the Sheriff, which violated Pyle's rights under the ADA or the RA. The ADA and RA impose liability upon certain employers for disability discrimination. The definition of "employer" under the ADA specifically encompasses any agent of an employer covered by the statute. 42 U.S.C. § 12111 (1995). In this case, Victoria County does not dispute that it is covered under the ADA. The Fourth, Seventh, Ninth, and Eleventh circuits have all agreed that when a plaintiff asserts a cause of action against an employer-municipality, under either the ADA or the RA, the public entity is liable for the vicarious acts of *any* of its employees as specifically provided by the ADA. Rosen v. Montgomery County Md., 121 F.3d 154, 157 (4th Cir. 1997); Silk v. City of Chicago, 194 F.3d 788, 806 (7th Cir. 1999); Duvall v. County of Kitsap, 260 F.3d 1124, 1141 (9th Cir. 2001) (holding that the doctrine of respondeat superior applies to claims asserted directly under the ADA and the RA "in part because the historical justification for exempting municipalities from respondeat superior liability does not apply to [these statutes], and in part because the doctrine "would be entirely consistent with the policy of that statute, which is to eliminate discrimination against the handicapped"); Mason v. Stallings, 82 F.3d 1007, 1009 (11th Cir. 1996). Thus, the first element of a § 1983 claim–i.e., a policymaker–is not required under either the ADA or the RA.

Furthermore, while we have not yet spoken on the question of whether a policy of discrimination must be identified to sustain a claim under the ADA or the RA, the Fourth Circuit has

10

considered the issue and has concluded that a policy is not required. See Rosen, 121 F.3d at 157 n.3 (finding that a county could be held liable under the ADA even in the absence of a *policy* of discrimination). We agree with our sister circuit on this point. The ADA expressly provides that a disabled person is discriminated against when an entity fails to "*take such steps as may be necessary* to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." Id. at § 12182(b)(2)(A)(iii) (emphasis added). A plain reading of the ADA evidences that Congress intended to impose an affirmative duty on public entities to create policies or procedures to prevent discrimination based on disability. Id. § 12182(b)(2)(A)(ii)-(iii) (1985). Thus, although it is true that for claims asserted under § 1983, an official policy must be identified, the same rule cannot be reconciled with Congress's legislative objectives in enacting the ADA and the RA, and Victoria County has not cited any authority supporting this position.

Having concluded that neither a policymaker, nor an official policy must be identified for claims asserted under the ADA or the RA, we now turn our attention to Victoria County's assertion that Pyle failed to establish deliberate indifference. There is no "deliberate indifference" standard applicable to public entities for purposes of the ADA or the RA. However, in order to receive compensatory damages for violations of the Acts, a plaintiff must show intentional discrimination. Carter, 725 F.2d at 264. The facts addressed at trial support the jury's finding of intentional discrimination.

It is clear from the videotape of the accident that no matter how many times Daniel repeated himself and no matter how loudly he spoke, Pyle could not understand most of what he was saying. For example, while Daniel was demonstrating the sobriety tests, he told Pyle several times not to

11

start the test until after he was finished demonstrating. Nonetheless, each time, Pyle started to perform the task while observing Daniel. Instead of viewing these actions as an indication that Pyle was not understanding his verbal commands and trying a more effective form of communication, Daniel only became annoyed and continued to further instruct Pyle through verbal communication. When asked whether his communications with Pyle were effective in that Pyle understood him, Daniel answered "[w]ell, I don't know his state of mind. I knew he had a hearing problem."

In addition, during trial, Pyle's counsel asked Daniel if he was speaking quickly when informing Pyle of his legal rights. Daniel responded "[y]es, probably so, yes." Pyle's counsel proceeded to inquire as to whether Daniel believed this form of communication was effective. Daniel answered "[s]omewhat, but no." Further, Daniel acknowledged that an officer must continue to provide Miranda warnings or whatever warnings required to be given an arrestee until the officer has a genuine belief that the arrestee actually understood him. However, Daniel admitted that he did not know whether Pyle understood his rights as verbally communicated.

After conducting a thorough review of the record, we cannot conclude that there was no evidence produced to support the verdict. Therefore, the jury was not plainly erroneous in finding that Pyle sustained a claim under the ADA and the RA against Victoria County.

## CONCLUSION

Having concluded that Victoria County waived its sufficiency of the evidence claim and finding no plain error, we AFFIRM the district court's judgment.

AFFIRMED.